William M. Drummond and Ruby B. Drummond v. Commissioner.
Drummond v. Commissioner
Docket No. 87296.
United States Tax Court
T.C. Memo 1963-105; 1963 Tax Ct. Memo LEXIS 239; 22 T.C.M. (CCH) 485; T.C.M. (RIA) 63105; April 11, 1963
*239 Held: That petitioners have failed to meet the burden of proving error in respondent's determination of the fair market value of certain notes received in 1957 and 1958 from the Quality Foods Co-Operative, Incorporated. Richard F. Stone, Esq., Allied Arts Bldg., Lynchberg, Va., for the petitioners. Douglas O. Tice, Jr., Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies in petitioners' income taxes for the years and in the amounts as follows: Year
Deficiency
1957
$704.53
1958
508.81
The only significant issue is whether the fair market value of Quality Foods Co-Operative, Incorporated, notes received by petitioners in 1957 and 1958 in exchange for revolving fund certificates issued by the Co-Operative was less than that determined by respondent. Findings of Fact The petitioners, William M. Drummond and Ruby B. Drummond, are husband and wife who reside in Amherst, Virginia. They filed timely joint income tax returns for the taxable years 1957 and 1958 with the district director of internal revenue at Richmond, Virginia. Petitioners, during the years here involved, *240 owned and operated a retail grocery store in Amherst, Virginia, doing business in the name of "Drummond Cash Store." The petitioners maintained their books of account and reported income from this business on the accrual method of accounting. From some time prior to 1950 and continuing through the taxable years 1957 and 1958, petitioners were stockholder members of Quality Foods Co-Operative, Incorporated, (hereinafter referred to as the Co-Operative), Lynchburg, Virginia. The Co-Operative conducts a wholesale grocery business for the sale of merchandise exclusively to its members. Article XVII, section 4, of the bylaws of the Co-Operative provides as follows: All profits received by the Co-Operative during each year over and above the cost of operating the said Co-Operative shall be placed in a revolving fund, which shall be rebated to the members of record at the end of the year, in cash or Revolving Fund Certificates in proportion to their purchases, as shall be determined by the Board of Directors. Pursuant to the above quoted section of its bylaws, the Co-Operative issued to the petitioners Revolving Fund Certificates for 1957 and 1958 in the following amounts: Year
Amount
1957
$2,279.03
1958
2,135.50
*241 Simultaneously with the issue of the Revolving Fund Certificates, the Co-Operative called the certificates for retirement and gave the petitioners its registered notes in exchange therefor. Each of the notes was made payable to the petitioners or their executors, administrators, successors, or assigns and bore interest at two percent per annum from date, payable at maturity. The first note dated March 21, 1957, for $2,279.03, is payable March 15, 1965, and the second note dated March 31, 1958, for $2,135.50, is payable March 31, 1966. It is stated on the face of each note that the Co-Operative reserves the right to pay the note at any time prior to maturity with interest at two percent to date of payment. Each note also contains the following provision: This note is and shall be junior and subordinate to all other debts of the Association, both secured and unsecured. Upon the winding up or liquidation of the Association in any manner, after full payment to all its other creditors, this note, if then outstanding, shall be retired in full, with interest as aforesaid, or on a pro-rata basis without priority. This note is non-negotiable. The balance sheets of the Co-Operative for *242 the years 1952 through 1958 as of December 31 of each year are as follows: QUALITY FOODS CO-OPERATIVE, INCORPORATED Balance Sheets As of December 31, 1952 through 1956, inclusive ASSETS
1952
1953
1954
1955
1956
Cash
$ 6,396.03
$ 6,049.29
$ 14,674.26
$ 11,568.37
$ 2,275.89
Notes and
34,221.12
34,199.25
40,337.83
34,855.27
54,436.39
Accounts
Receivable
Merchandise
162,758.68
170,415.06
207,889.69
238,263.47
285,380.54
Inventory
Depreciable
Assets: Office Equipment
1,601.46
1,767.01
3,751.97
3,960.75
4,025.75
Warehouse
2,668.78
4,263.38
3,905.83
3,920.83
5,265.59
Equipment
Trucks
6,931.93
10,606.22
7,023.96
10,396.51
12,073.39
Buildings
504.58
504.58
Leasehold
961.06
1,966.40
2,486.67
2,486.67
Improvements
Less: Reserve for
deprecia-
tion
(7,712.82)
(10,497.93)
(5,129.72)
(8,596.04)
(12,666.75)
Land
5,045.84
5,045.84
5,230.40
5,230.40
5,230.40
Prepaid Insurance
2,546.08
2,204.48
1,762.56
2,113.86
1,080.46
Prepaid Taxes
79.70
78.20
78.20
Total Assets
$215,041.38
$225,596.44
$281,491.38
$304,200.09
$359,588.33
LIABILITIES
Accounts Payable
$ 25,145.37
$ 31,915.80
$ 64,645.69
$ 43,665.39
$ 65,380.42
Bonds, Notes and
Mortgages
payable with
original matu-
rity less than 1
20,000.00
8,000.00
10,000.00
year
Bonds, Notes and
Mortgages
payable with
original matu-
rity of 1 year or
2,733.45
1,600.78
99,959.15
130,697.39
more
Accrued Taxes
544.39
580.92
558.52
625.75
866.78
Patronage
68,759.65
91,140.42
117,428.65
46,091.28
55,285.22
Dividends Payable
Capital stock:
98,500.00
93,000.00
99,500.00
104,500.00
108,000.00
Common stock
Earned Surplus
(641.48)
(641.48)
(641.48)
(641.48)
(641.48)
(deficit)
Total Liabilities
$215,041.38
$225,596.44
$281,491.38
$304,200.09
$359,588.33
*243 QUALITY FOODS CO-OPERATIVE, INCORPORATED Balance Sheets As of December 31, 1957 and 1958 ASSETS
1957
1958
Current Assets
Cash
$ 22,827.63
$ 23,464.49
Accounts Receivable - Members
61,282.54
69,840.58
Adv. Allowances Received
1,654.29
Merchandise Inventory
296,308.17
385,291.23
Total Current Assets
$380,418.34
$480,250.59
Other Assets
Stock Subscriptions Receivable
$ 1,584.43
$ 1,234.43
Prepaid Expenses
2,359.08
1,926.47
Fixtures
23,796.68
33,605.74
Less: Reserve for depreciation
(13,879.64)
(13,758.75)
Land and Building
37,358.39
39,149.27
Less: Reserve for depreciation
(359.59)
(1,268.81)
Total Other Assets
$ 50,859.35
$ 60,888.35
Total Assets
$431,277.69
$541,138.94
LIABILITIES
Current Liabilities: Accounts Payable
$ 54,364.62
$ 95,377.15
Accrued Payroll Taxes
1,019.48
1,399.64
Total Current Liabilities
$ 55,384.10
$ 96,776.79
Deferred Liabilities: Notes Payable - Members
$176,679.92
$211,520.14
Mortgages Payable
23,359.24
20,640.00
Accrued Interest
10,564.38
13,595.43
Total Deferred Liabilities
$210,603.54
$245,755.57
New Worth
Capital stock issued
$116,500.00
$124,000.00
Surplus
(641.48)
(641.48)
Contingent Revolving Fund
1,280.53
985.26
Undivided Overcharges
48,151.00
74,262.80
Total Net Worth
$165,290.05
$198,606.58
Total Liabilities
$431,277.69
$541,138.94
*244 Profit and loss statements for the Co-Operative for the years 1952 through 1958 are as follows: QUALITY FOODS CO-OPERATIVE, INCORPORATED Condensed Profit and Loss Statement 1952 through 1958, inclusive 1952
1953
1954
1955
Sales
$1,791,262.63
$1,792,104.48
$1,852,099.10
$1,984,659.55
Cost of
Sales
1,741,476.05
1,735,343.00
1,792,751.35
1,922,368.46
Gross
Profit
$ 49,786.58
$ 56,761.48
$ 59,347.75
$ 62,291.09
Other
Income
38,227.14
42,660.00
46,191.32
53,524.28
Total In-
come
$ 88,013.72
$ 99,421.48
$ 105,539.07
$ 115,815.37
Expenses
71,052.54
71,208.46
71,747.95
81,862.15
Net In-
come *
$ 16,961.18
$ 28,213.02
$ 33,791.12
$ 33,953.22
1956
1957
1958
Sales
$2,286,459.77
$2,846,671.07
$3,277,994.62
Cost of
Sales
2,199,150.44
2,750,126.07
3,159,793.63
Gross
Profit
$ 87,309.33
$ 96,545.00
$ 118,200.99
Other
Income
59,067.59
52,570.64
64,377.16
Total In-
come
$ 146,376.92
$ 149,115.64
$ 182,578.15
Expenses
94,351.91
100,964.64
108,315.35
Net In-
come *
$ 52,025.01
$ 48,151.00
$ 74,262.80
Opinion Respondent, in *245 his statutory notice of deficiency for 1957, made the following explanation: (a) It is held that the note received by you in 1957 from Quality Foods Co-Operative, Incorporated, representing purchase rebates or patronage dividends, is includible in taxable income in the year of receipt to the extent of its fair market value or $1,428.95 ($2,279.03 X.627). Respondent's determination for 1958 contained substantially the same statement except for the amount and ratio applied which, for 1958, were as follows: Fair market value of $1,338.96 ($2,135.50 X.627). Petitioners claim that the notes had no fair market value in the years in question. The burden lies with petitioners to demonstrate error in respondent's determination. Petitioners do not suggest any intermediate amount less than determined by respondent but more than zero. There is no difference in the principles involved as between 1957 and 1958 and the two years will be considered together. There are a multitude of authorities on the subject of fair market value, but each is based upon the circumstances involved in the particular case. Essentially, as here, the issue is one of fact, and a detailed analysis of the authorities *246 would be fruitless. In projecting their position, petitioners take some pains to discuss the financial status of the Co-Operative. Balance sheets and condensed profit and loss statements for the years material are set forth in our Findings. The financial condition of the Co-Operative is, of course, a factor to be considered. In the instant case, the financial statements only serve to indicate that the notes had intrinsic value, and fail to demonstrate absence of fair market value. Petitioners also urge that the conditions set forth in the notes eliminate the possibility of fair market value. These conditions, which are set forth in our Findings, are also factors to be considered but are not of themselves controlling in support of petitioners' claim of complete absence of fair market value. Petitioners' greatest reliance was placed upon the testimony of a well-known banker, who was offered as an expert witness. He made a very favorable impression, and we have no doubt of his objectivity and credibility. However, it is clear from his testimony that he had no knowledge of or experience with the notes in question, and could go no further than to say that his bank would not have discounted *247 the paper. Moreover, he did not know, and was not advised, of the meaning of the term "fair market value" for the purposes of this case, and there was no basis on which he could offer an opinion. That a bank would not discount a note of the character of those here involved is not surprising, but falls short of demonstrating that there was no fair market value for the notes. Finally, petitioners make a somewhat general statement concerning the possible application of the Sixteenth Amendment. We find neither facts nor law to support the contention as applied to this case. In the light of the foregoing discussion, we must hold that petitioners have failed to sustain the burden of proof of error in respondent's determination. Decision will be entered under Rule 50. Footnotes
*. Distributed as Patronage Dividends.↩